UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD GRINSTEAD,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:14-cv-0059-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from July 15, 2008, plaintiff's alleged disability onset date,[2] through the date of the final administrative decision.  (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 6, 8.)

[2] At the hearing before the ALJ, plaintiff amended his alleged disability onset date to January 2, 2010.  (AT 33.)  Nevertheless, the ALJ's determined in his decision that plaintiff had not been under a disability from July 15, 2008, plaintiff's original alleged onset date.  (AT 24.)

judgment.  (ECF No. 19.)  Plaintiff did not file a reply.

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion for summary judgment, and remands this case for further proceedings consistent with this order.

I.   BACKGROUND

Plaintiff was born on September 15, 1951, is a high school graduate, attended one year of college, and previously worked as an insulation installer, pest exterminator, and power washer operator.[3]  (Administrative Transcript ("AT") 34-37.)  On February 10, 2010, plaintiff applied for both DIB and SSI, alleging that he was unable to work as of July 15, 2008.  (AT 119-28.)  On July 15, 2011, the Commissioner determined that plaintiff was not disabled.  (AT 14, 69-74.)  Upon plaintiff's request for reconsideration, the determination was affirmed on October 27, 2010.  (AT 78-82.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on October 4, 2011, and at which plaintiff (represented by counsel) testified.  (AT 14, 31-56.)  During this hearing, plaintiff amended his alleged disability onset date to January 2, 2010.  (AT 14, 33.)

In a decision dated April 5, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from July 15, 2008, through the date of the ALJ's decision.  (AT 14-25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 26, 2013.  (AT 1-5.)  Thereafter, plaintiff filed this action in federal district court on January 9, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

Plaintiff raises the following issues:  (1) whether the ALJ failed to properly consider the medical opinion evidence in the record when assessing plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ erred in exclusively utilizing the Medical-Vocational Guidelines at

---

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

Step Five to determine that there were jobs that existed in significant numbers in the national economy that plaintiff could perform; and (3) whether the ALJ failed to satisfy his duty to fully and fairly develop the record.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At the First Step, the ALJ concluded that plaintiff had

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

not engaged in substantial gainful activity since January 2, 2010, plaintiff's amended alleged disability onset date. (AT 16.) At Step Two, the ALJ determined that plaintiff had the following severe combination of impairments: "chronic obstructive pulmonary disease, Dupuytren's contractures, and depression." (Id. (citations omitted).) However, at Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 17.)

Before proceeding to Step Four, the ALJ assessed plaintiff's residual functional capacity ("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can remember, follow and carry out simple repetitive tasks with adequate persistence and pace. He can adapt to changes in a routine work setting and get along with coworkers and supervisors.

(AT 19.)

At Step Four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 23.) The ALJ continued to Step Five and determined that considering plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.)

---

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to Step Five. Id.

4

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from July 15, 2008, through the date of the ALJ's decision.  (AT 24.)

### B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

#### 1.    *The ALJ Erred in Considering Dr. Kinnison's Opinion When Assessing Plaintiff's RFC*

First, plaintiff asserts that the ALJ erred by crediting "great weight" to the opinion of Dr. Kinnison, an examining physician, because he did not explain why he did not include the environmental limitations opined by Dr. Kinnison in his RFC determination.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Kinnison gave plaintiff a physical examination on February 16, 2012.  (AT 492.)  During this examination, Dr. Kinnison reviewed plaintiff's past medical records and noted plaintiff's complaints concerning breathing problems.  (AT 492-93.)  Dr. Kinnison's examination notes indicated a largely normal examination except that Dr. Kinnison heard bilateral "bibasilar dry rales" when he examined plaintiff's chest and lungs.  (AT 493.)  Based on this examination, Dr. Kinnison diagnosed plaintiff with chronic obstructive pulmonary disease.  (AT 495.)  With respect to plaintiff's ability to perform workplace functions, Dr. Kinnison opined that plaintiff has the ability to stand and walk up to six hours daily and to lift 50 pounds occasionally and 25 pounds regularly.  (Id.)  He further opined that plaintiff has an unlimited ability to sit, climb, balance, stoop, kneel, crawl, crouch, reach, handle, finger, and feel.  (Id.)  Finally, Dr. Kinnison opined that "[t]he only workplace or environmental limitations would be working around chemicals, dust, fumes, or pulmonary irritants."  (Id.)  Dr. Kinnison noted that plaintiff could "occasionally" tolerate exposure to these pulmonary irritants, meaning that plaintiff could tolerate exposure for up to one-third of the workday.  (AT 490.)  The ALJ gave Dr. Kinnison's opinion "great weight" because it was "well-supported by the other medical and non-medical evidence available in the record."  (AT 21.)

The ALJ's RFC does not differ greatly from Dr. Kinnison's assessment.  Nevertheless, plaintiff argues that the ALJ erred because he impliedly rejected Dr. Kinnison's determination that plaintiff had an environmental restriction regarding dust and other pulmonary irritants without providing a reason for why he did not adopt this restriction.  As noted above, an ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons, and may reject a contradicted opinion of a treating or examining professional for "specific and legitimate" reasons.  Lester, 81 F.3d at 830-31.  Here, the ALJ did not provide any reasons in his decision as to why this aspect of Dr. Kinnison's opinion was not included in the ALJ's RFC determination, let alone state a proper legal basis for rejecting this opinion that was supported by substantial evidence in the record.  Accordingly, the ALJ's

6

1  rejection of this limitation without explanation was in error.  While such an error would ordinarily

2  be considered harmless, for the reasons discussed below, the court cannot make such a finding

3  under the circumstances presented by this case.

4      2.    *The ALJ's Error Was Not Harmless Because had the ALJ Properly*

5      *Considered Dr. Kinnison's Environmental Limitation, Vocational*

6      *Expert Testimony Could Have Been Required at Step Five*

7      Plaintiff argues that the ALJ's error in not addressing the environmental restriction opined

8  by Dr. Kinnison was prejudicial because the ALJ's decision to not consult a vocational expert

9  ("VE") at Step Five would require reversal had the ALJ adopted the environmental limitation.

10  Plaintiff's argument is well taken because, under the circumstances presented by this case, the

11  environmental restriction opined by Dr. Kinnison would have required the ALJ to consult a VE at

12  Step Five.

13      The Medical-Vocational Guidelines (the "Grids") take administrative notice of the

14  numbers of unskilled jobs that exist throughout the national economy at various functional levels.

15  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b).  An ALJ may resort to the Grids at Step

16  Five of the sequential analysis to determine whether there exists unskilled work within the

17  national economy for which the claimant is capable of performing.  "The ALJ can use the Grids

18  without vocational expert testimony when a non-exertional limitation is alleged because the Grids

19  provide for the evaluation of claimants asserting both exertional and non-exertional limitations.

20  But the Grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe

21  so as to significantly limit the range of work permitted by the claimant's exertional limitations."

22  Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations and quotation marks omitted).

23  In such instances, the testimony of a VE is required.  Id.

24      With respect to the impact an environmental restriction may have on a claimant's ability

25  to work, Social Security Ruling ("SSR")[5] 85-15 provides:

26  ---

[5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy."
27  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin.,
28  554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted).  Courts will "defer to [SSRs] unless they

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.
>
> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [Vocational Expert].

1985 WL 56857, at *8.

Here, Dr. Kinnison's opined that plaintiff could "occasionally" be exposed to the listed pulmonary irritants, meaning that plaintiff could be exposed for at least one-third of a workday. (AT 490.) The impact of this restriction falls into the third category contemplated by SSR 85-15 because it is more limiting than a restriction to avoid excessive amounts of exposure, but is less limiting than a restriction finding that plaintiff can tolerate very little exposure.

A Step Five determination "generally require[s] consultation of occupational reference materials or the services of a [Vocational Expert]," SSR 85-15, 1985 WL 56857, at *8 (emphasis added), when an environmental restriction of "moderate" severity is determined. Here, the ALJ relied exclusively on the Grids to determine that there were other jobs in the national economy that plaintiff could perform. The ALJ properly determined that a VE's testimony was not necessary based on the mild mental nonexertional limitations he assessed with respect to plaintiff's RFC. However, such a determination would have been in error had the ALJ addressed and adopted the additional environmental limitation opined by Dr. Kinnison because the Commissioner's ruling in SSR 85-15 directs that an ALJ consult a VE when a claimant has "moderate" environmental limitation regarding pulmonary irritants. See Gooch v. Astrue, 2008 WL 4370097, at *8 (E.D. Cal. Sept. 22, 2008) (holding that the ALJ erred in relying on the Grids because "the ALJ's conclusion that Plaintiff[ ] need[ed] to avoid even moderate exposure to

---

are plainly erroneous or inconsistent with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

pulmonary irritants" required the use of VE testimony under SSR 85-15).  Because the ALJ failed to properly consider Dr. Kinnison's opinion concerning plaintiff's "moderate" environmental restriction, the court cannot determine at this juncture whether the ALJ would have been required to consult a VE.  Furthermore, because plaintiff is a person of advanced age under the regulations,[6] a determination at Step Five by a VE that plaintiff's occupational base of medium work would be significantly eroded by the additional environmental restriction could render plaintiff disabled within the meaning of the Act.[7]  Accordingly, the court cannot determine at this time that the ALJ's failure to address Dr. Kinnison's opinion that plaintiff had an environmental restriction was harmless.

        3.    *The ALJ Satisfied His Duty to Fully and Fairly Develop the Record*

Plaintiff also argues that the ALJ failed to fulfill his duty to fully and fairly develop the record because he improperly declined to hold a supplemental hearing requested by plaintiff for

---

[6] The Commissioner's regulations define a "person of advanced age" as a person over the age of 55.  20 C.F.R. §§ 404.1563(e), 416.963(e).  Plaintiff was 58 years old at the time of the amended alleged onset date, thus making him a "person of advanced age."  (AT 23.)

[7] According to the Grids, Table 2 applies to persons with a RFC that allows no more than light work.  20 C.F.R. pt. 404, subpt. P, app. 2, table no. 2.  Under Rule 202.06, a person of advanced age, who is a high school graduate or more, where that educational level does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferable is categorized as "disabled."  20 C.F.R. pt. 404, subpt. P, app. 2, table no. 2, § 202.06.  Similarly, a person who has the same characteristics, but is only able to perform sedentary work is categorized as "disabled."  Id. § 201.6.  However, a person with the same characteristics who is able to do no more than medium work is categorized as "not disabled."  Id. § 203.15.  Plaintiff meets the characteristics specified in each of these categories. (See AT 23.)  Accordingly, if it were determined that the additional environmental limitation opined by Dr. Kinnison eroded plaintiff's RFC such that he could no longer engage in medium work, then plaintiff would be deemed "disabled" under the Grids.  Similarly, if it were determined that the addition of the environmental restriction as a nonexertional limitation eroded plaintiff's occupational base of medium work such that it effectively precluded plaintiff from performing any medium exertional level jobs, then plaintiff would be deemed "disabled."  See Cannon v. Massanari, 2001 WL 1543850, at *1 (N.D. Tex. Nov. 30, 2001) (holding that the ALJ erred in finding plaintiff "not disabled" when ALJ also determined that plaintiff was a person of advanced age with the residual functional capacity for medium work with environmental restrictions against exposure to fumes, heat, and humidity, and a VE testified that "[p]laintiff's environmental restrictions precluded him from performing any occupations in the national economy at the medium exertional level").

the purpose of questioning witnesses and obtaining the testimony of a VE.  Plaintiff asserts that the ALJ's refusal to hold this additional hearing violated section 1-2-7-30.H of HALLEX,[8] which states: "[i]f the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." However, as plaintiff admits, HALLEX does not have the force and effect of law.  Therefore, an ALJ does not commit error when he fails to follow the mandate of section 1-2-7-30.H or any other section of HALLEX.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.").  Accordingly, the ALJ's failure to follow HALLEX was not in error.

Nevertheless, plaintiff argues that the totality of the circumstances of the present case still establish that the ALJ did not fully and fairly develop the record by refusing plaintiff's request for a supplemental hearing to obtain VE testimony and pulmonary function testing that would have clarified the severity of plaintiff's pulmonary impairments.  However, as noted above, the court cannot determine at this time whether the ALJ was required to consult a VE.  Furthermore, the ALJ left the record open at the end of the hearing to allow plaintiff to submit additional records. (AT 54-55.)  In doing so, the ALJ satisfied his duty to ensure that the record was developed. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that the ALJ satisfied his duty to

---

[8] HALLEX is an administrative manual of guiding principles and internal policies issued by the Associate Commissioner to be used in the Administration's adjudication of claims at the Hearing, Appeals Council and Civil Action levels.  See Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) (describing HALLEX and how it is used within the Administration).  Section I-1-001 of HALLEX, entitled "PURPOSE," states in part that:

> Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff.  HALLEX includes policy statements resulting from an Appeals Council en banc meeting under the authority of the Appeals Council Chair.  It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels.

(Id. (quoting HALLEX I-1-001).)

develop the record when he left the record open after the administrative hearing to allow plaintiff to submit additional medical evidence).[9]

Accordingly, plaintiff's argument that the ALJ erred by failing to fully and fairly develop the record is without merit. Nevertheless, because the court finds that the ALJ erred with respect to his consideration of Dr. Kinnison's opinion, plaintiff's motion for summary judgment is granted in part.

### 4. *Remand for Further Administrative Proceedings is Warranted*

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Here, the ALJ's failure to properly consider Dr. Kinnison's opinion that plaintiff had a "moderate" environmental restriction concerning pulmonary irritants could be remedied by further proceedings. Accordingly, the court will remand this action to the Commissioner for additional administrative proceedings consistent with this order. The court does not express any opinion at this time regarding whether the ALJ should adopt the environmental restriction opined by Dr. Kinnison into his RFC determination. Nevertheless, on remand, the ALJ should discuss this aspect of Dr. Kinnison's opinion and consider whether it should be adopted into plaintiff's RFC or discounted for legally proper reasons supported by substantial evidence in the record. Furthermore, if the ALJ determines that the environmental restriction opined by Dr. Kinnison should be incorporated into plaintiff's RFC, then the ALJ should obtain the testimony of a VE when making a Step Five determination regarding whether there exists jobs in the national economy that plaintiff could perform given his limitations.

The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision. The ALJ is also free to develop the record in other respects, if deemed appropriate.

////

---

[9] In addition, plaintiff had the opportunity to submit additional evidence, such as pulmonary test results, to the Appeals Council, but did not do so. (See AT 254-56.)

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED IN PART.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is DENIED.
3. The action is remanded for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).
4. Judgment is entered for plaintiff.

IT IS SO ORDERED.

Dated: March 9, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE